UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA HAUSE,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 08-1501 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Dana Hause filed this action on October 31, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on November 25 and 26, 2008. (Dkt. Nos. 9-10.) On May 26, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. (Dkt. No. 17.) The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this Opinion.

///

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On March 9, 2005, Hause filed an application for Supplemental Security Income benefits alleging a disability onset date of April 27, 2004. Administrative Record ("AR") 13. The application was denied initially and upon reconsideration. *Id.* An Administrative Law Judge ("ALJ") conducted hearings on September 11, 2007 and May 13, 2008, at which Hause, a medical expert ("ME"), and a vocational expert testified. AR 42-69. On June 17, 2008, the ALJ issued a decision denying benefits. AR 10-19. On September 23, 2008, the Appeals Council denied Hause's request for review. AR 5-7.

This lawsuit followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Hause has the following severe impairments: bipolar disorder and personality disorder. AR 15. Hause's residual functional capacity ("RFC") has no exertional limitations. She "has the ability to perform up to 4-5 complex step instructions in a relatively habituated setting without substantial changes; should not perform tasks requiring hypervigilance; should not operate hazardous machinery; and, should perform no fast paced work." AR 16. Hause is able to perform her past relevant work as a delivery driver, banquet secretary, and phlebotomist. AR 18.

## C. The Medical Evidence

On April 28, 2004, Hause put her arm threw a window causing multiple lacerations and requiring stitches. AR 197. She called 911. *Id.* When the police arrived, Hause "began breaking things and throwing things." *Id.* The police involuntarily committed her on a 5150 hold.[1] *Id.* At the hospital, Hause reported to Dr. Thacker that she had had an argument with her husband, and that although she had been sober for three years and had not smoked marijuana for five

---

[1] A "5150 hold" refers to Cal. Welfare & Inst. Code § 5150, which permits a person to be placed in an approved mental health facility for 72 hours for "treatment and evaluation" if the person, because of a mental disorder, "is a danger to others, or to himself or herself, or gravely disabled."

months, she drank and smoked some marijuana. *Id.* A mental status exam revealed "good eye-to-eye contact, and is cooperative. She is oriented. She has pressured speech. * * * Her thought process is logical. She denies hearing voices or being paranoid. * * * Her general fund of information is poor. The patient is quite emotional during interview, and she is angry, irritable, and frustrated because her 8-month-old baby has been taken away by CPS. * * * The patient has a poor insight into her illness. Her judgment is poor. * * * The patient engages in impulsive and unpredictable behavior which places the patient and others at the risk of injury. The patient denies being suicidal." AR 198. Thacker diagnosed her with a mood disorder, not otherwise specified and an episodic history of marijuana abuse. *Id.* He gave her a Global Assessment of Functioning ("GAF") of 30. *Id.*

On Hause's discharge from the hospital on May 6, 2004, Dr. Quan gave Hause a "final diagnosis" of bipolar disorder, not otherwise specified, amphetamine abuse,[2] and a GAF of 50. AR 190. Quan said that Hause's hospital admission was "prolonged [because] she was violent, she was acting bizarrely, increased pressured speech, and talking nonsense." AR 191. However, at discharge, "[h]er manic and psychotic symptoms subsided with current treatment." *Id.*

On May 12, 2004, Hause was seen by Marriage and Family Therapist Prendergast. AR 275. Hause admitted to a long history of alcohol and drug abuse, including marijuana, PCP, and methamphetamine. *Id.* Hause reported seeing "shadows on an occasional basis." *Id.* She said she had stopped taking her medications. AR 276. Prendergast diagnosed Hause with psychotic disorder, not otherwise specified, and marijuana, amphetamine, and alcohol

---

[2] Quan noted that Hause's blood testified positive for amphetamine and marijuana. AR 190.

4

dependence. AR 278. She gave Hause a GAF of 48. *Id.* She referred Hause to a staff psychiatrist for further evaluation. AR 277.

On July 27, 2004, Hause saw Dr. Thacker. AR 270. Hause reported she was feeling better. *Id.* Thacker prescribed various medications. *Id.*

Starting on September 29, 2004, and continuing through May 18, 2007, Hause was seen by Dr. Payne. AR 268, 292. For each visit Payne completed a "Medication Visit" form. Many of the records therefore reflect adjustments to Hause's medications. A review of the many visits indicates that Hause's condition was labile. Sometimes she gave positive reports about her mood; other times, she gave negative reports. For example, on June 29, 2005, she reported falling episodes and memory problems. AR 255. In two visits in October of 2005, she reported that she was sad, depressed, weepy, and slept poorly. AR 250, 255. On November 23, 2005, Hause reported that she was sleeping better but her mood was "still irritable." AR 321. On April 12, 2006, Hause reported that she was exhausted, not sleeping well, and her mood was irritable. AR 316. By contrast, on June 13, 2006, Payne stated that Hause's mood was "not bad, mellow, straightline," and that one of the drugs was helping her sleep better. AR 312. Yet, a month later, on July 11, 2006, Hause reported that her mood was more irritable, that she had been crying more frequently; Payne found that her speech was "somewhat pressured, irritable." AR 309.

The remainder of 2006 and 2007 continued with the same ups and downs. *See* AR 302, 301, 298, 297, 295, 293, 292.

In the middle of this treatment period, on March 15, 2006, Payne completed a Medical Report for CalWORKs in which he stated that Hause was unable to work, diagnosed with bipolar disorder, and her prognosis was fair. AR 318. Payne stated that she had "mood fluctuations," "impaired concentration," and "depression." *Id.* He stated that she had been incapacitated since May 25, 2004. *Id.* Four months later, on July 18, 2006, Payne completed a Medical

5

Opinion Re: Ability to do Work-Related Activities. AR 304-07. He was asked to rate Hause using the following terms and descriptions: unlimited or very good (ability to function in this area is more than satisfactory); good (ability to function in this area is limited but satisfactory); fair (ability to function in his area is seriously limited, but not precluded); and poor or none ("poor") (no useful ability to function in this area). AR 304. Under the category "Mental Abilities and Aptitude Needed to do Unskilled Work," Payne rated her as fair or poor in all areas. AR 304-05. He explained Hause's limitations in these areas as follows: "Patient has never responded well to medications and has had problems with side effects. Mood fluctuates, is labile, concentration fluctuates, has auditory hallucinations." AR 306. Under the category "Mental Abilities and Aptitudes Needed to do Semiskilled and Skilled Work," Payne rated her as poor in all areas. *Id.* He explained Hause's limitations in these areas as follows: "As described above, pt's mood has been chronically unstable. dx'd with bipolar disorder. Fluctuating mood and concentration affect her ability to focus." *Id.* In the category "Mental Abilities and Aptitudes Needed to do particular Types of Jobs," Payne rated her as good in her interaction with the public; fair in her ability to maintain socially appropriate behavior; good in her ability to adhere to basic standards of neatness and cleanliness; poor in her ability to travel in unfamiliar places; and fair in her ability to use public transportation. AR 307-08. Payne explained Hause's limitations in these areas as follows: "Patient doesn't interact very well in public." AR 307. Payne also stated that at Hause's last visit, she "felt like 'snapping,' was agitated, speech pressured, having crying episodes." *Id.* Finally, Payne said that Hause's impairments would cause her to be absent from work about four days per month. *Id.*

The ME testified that Hause had "been given different types of diagnoses, from very severe diagnoses to mild. So, I'm going to go with a mood disorder not otherwise specified" and "a personality disorder not otherwise specified." AR 46.

6

The ME then opined as to Hause's RFC, which the ALJ adopted. AR 46-47. The ME stated that the RFC was "consistent with the records. Essentially, she gets a diagnosis of mood disorder historically from 2004 onward; and then, she's in a type of treatment. The main complaint was that she was not responding to medication in the early stages, which is actually mentioned in Exhibit 12F in one of the pages, which, of course, contradicts the record, because she continuously shows improvement with medication. The mood is stable, she's doing fine, Exhibit 12F, as well as Exhibit 11F and 10F. So, the, the – earlier, there was some slowness in her response; but in the recent past, 2006 and 2007, there is consistent suggestion of, her mood is stable." AR 47-48.

A non-examining physician's opinion constitutes substantial evidence when it is supported by other evidence in the record and consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a non-examining physician's opinion cannot by itself constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

When, as here, a treating physician's opinion is contradicted, the ALJ must present "specific, legitimate reasons supported by substantial evidence in the record" before rejecting it. *Widmark,* 454 F.3d at 1066-67.

The ALJ rejected Payne's 2006 opinion about Hause's ability to work for the following reasons: (1) the ME "was the only medical professional who has had an opportunity to review the entire record as developed up to the date of the hearing and to be present at the hearing for the testimony of the claimant"; (2) Payne's records "appear[] to be based primarily on the subjective statements of the claimant"; (3) and the records show that Hause's treatment was conservative. AR 18. These reasons are not supported by substantial evidence in the record.

7

The first reason is not supported by substantial evidence. The ME initially stated his opinion at a hearing at which Hause did not testify. AR 44. The ME stated that Hause "continuously shows improvement with medication." AR 48. However, as Payne's treating records indicate, Hause's course of treatment did *not* reflect continuous improvement. *See* AR 255, 249-52, 319-22, 316-17, 312-14, 309, 300-03, 296-299. The ME also stated that "in the recent past, 2006 and 2007, there is consistent suggestion of, her mood is stable." AR 48. However, the ME's opinion is again inconsistent with the treatment records, which show that in 2006-2007 Hause's mood continued to be unstable. *Compare* AR 314, 316-17, 319-20 (in Feb.-May 2006, meds have no effect on mood and cause problems with controlling muscular movements, patient irritable, drained); AR 312-313 (in May-June 2006, mood not as bad, mellow, doesn't snap like before); AR 309 (in July 2006, felt like snapping, irritable, crying more frequently, pressured speech, auditory hallucinations); AR 301-02 (in Aug. 2006, mood stable, 3 good days in a row,[3] no major mood swings); AR 299-300 (in Oct.-Nov. 2006, mood stable); AR 296-98 (in Dec. 2006-Feb. 2007, crying episodes for 3-4 hours, depressed for no reason, snappy, meds not stabilizing mood); AR 295 (in Mar. 2007, not depressed for one week); AR 294 (later in Mar. 2007, gets mad easily). The ME's testimony that Hause had no episodes of decompensation (AR

---

[3] When Payne describes Hause's mood as stable, or more stable, Payne sometimes describes Hause as having three good days in a row or as not being depressed for one week. AR 295, 302. As the Ninth Circuit has noted, a treating physician's statements "'must be read in context of the overall diagnostic picture.'" *Ryan v. Comm'r of Social Security*, 528 F.3d 1194, 1201 (9th Cir. 2008) (citation omitted). Read in context with the overall treatment record, Payne's description of a more stable mood on occasion does not necessarily mean that Hause was no longer subject to mood instability. *See id.* On the last two visits in the record – April 17, 2007, and May 18, 2007 – Hause was taking her medications as prescribed and reported that her mood was stable. AR 293, 292. However, based on her lengthy history, two visits are insufficient to establish a trend.

18) is difficult to reconcile with Hause's hospitalization on a 5150 hold.[4]  AR 197.

The ALJ's second reason is not supported by substantial evidence.  The ME relied on the same treatment records and differed only in his interpretation.  AR 45-48; *see Orn*, 495 F.3d at 632 ("[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence'").  Payne did in fact have lab work done.  *E.g.,* AR 309.

The ALJ's third reason is also not supported by substantial evidence.  Hause was treated extensively over several years.  Payne continuously tried different medications and different dosages in an attempt to find the right mix of drugs that would stabilize Hause's symptoms.

Because the ALJ failed to set forth specific and legitimate reasons supported by substantial evidence for rejecting Payne's opinion, that opinion must be credited on remand.  *See Widmark*, 454 F.3d at 1069.

### D.  Hause's Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

#### 1.  Step One of the Credibility Analysis

At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant,

---

[4] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace.  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."  20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00.C.4.  Episodes of decompensation may be inferred from medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system such as hospitalization.  *Id.*

however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (emphasis in original, citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  The ALJ found that Hause's "medically determinable impairments could reasonably be expected to produce the alleged symptoms."  AR 17.

### 2. Step Two of the Credibility Analysis

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  The ALJ made no finding, nor was there any evidence of malingering.

"In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief."  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is unpersuasive."  *Id.* (citation and quotation marks omitted).  In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the

10

claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (en banc) (citing Social Security Ruling 88-13,[5] quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ gave two reasons for discounting Hause's credibility: (1) the "objective medical evidence fails to fully support the claimant"; and (2) she displayed "a lack of candor regarding her history." AR 17.

The first reason is not supported by substantial evidence. Hause testified that she cannot work due to her mood instability and impaired concentration. AR 61, 64. Although she continues to hear voices, she can deal with it because she knows "there's really not somebody there." AR 62. Hause's testimony is fully consistent with her treating physician's evaluations and medical records over a two-year period. AR 304-07, 318.

The ALJ compared Hause's testimony that she has not used drugs since 2004 (AR 68) with medical records showing that she refused drug testing in 2005. AR 221. The ALJ cited a letter from a licensed clinical social worker (Clark) to the Department of Social Services dated April 19, 2005, in which Clark stated: "Recently, [Hause] was offered drug free transitional housing where she would be able to have her children returned to her. One of the requirements is that she be Alcohol and Drug free. She was asked to test and refused testing. She left before the test could be administered." AR 17, 220-21. Payne's records in September 2005 also refer to Hause "being unable to give a urine sample" and

---

[5] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

11

therefore being considered positive. AR 252. Inconsistent statements concerning drug use could constitute substantial evidence supporting an ALJ's credibility finding. *See Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

When, as here, an ALJ relies on a reason that is not supported by substantial evidence, the question is "whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The court must determine whether "the ALJ's remaining reasoning *and ultimate credibility determination* were adequately supported by substantial evidence." *Id.* Here, even assuming that the ALJ could properly rely on Hause's refusal to take a drug test, his ultimate credibility determination is not supported by substantial evidence to the extent Hause's testimony is consistent with Payne's evaluations.

### E. Statements by Hause's Mother

On June 13, 2004, Hause's mother completed a Function Report about her daughter. AR 139-47. The mother reported that she had to remind Hause to wash, to tell her to comb her hair, and to ask if she had brushed her teeth. AR 140. She also had to remind Hause to take her medicine and to make sure she took it. AR 141. Hause could no longer cook because she forgot things on appliances. *Id.* Hause couldn't go out alone because she could wander off, hurt herself, or hurt others. AR 142. Hause doesn't follow written instructions well. AR 144.

The ALJ stated that he gave "greater weight to the documented medical evidence of record." An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's credibility assessment is supported by substantial evidence to the extent that the mother's statements conflict with Payne's evaluations.

# IV.
# **ORDER**

IT IS HEREBY ORDERED that the matter is remanded at Step Four for proceedings consistent with this Opinion. On remand, the Commissioner must credit the opinions of Dr. Payne as true.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 21, 2009

*Alicia G. Rosenberg*

ALICIA G. ROSENBERG
United States Magistrate Judge